# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

April 24, 2024

Lyle W. Cayce
Clerk

No. 23-10872

Rick Milteer,

*Plaintiff—Appellant*,

*versus*

Navarro County, Texas,

*Defendant—Appellee*.

_____

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:21-CV-2941

_____

Before Davis, Smith, and Haynes, *Circuit Judges*.

W. Eugene Davis, *Circuit Judge*:

Plaintiff-Appellant, Rick Milteer, proceeding *pro se*, appeals the district court's summary-judgment dismissal of his claims against Defendant-Appellee, Navarro County, Texas ("the County"), alleging failure to accommodate, discrimination, and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*; the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.*; and the Texas Commission on Human Rights Act ("TCHRA"), Tex. Lab. Code Ann. § 21.001 *et seq.* As set forth below, we determine that the district court erred in treating the County and the Texoma High Intensity

Drug Trafficking Area ("HIDTA") as separate entities and in failing to impute the actions/inactions of Lance Sumpter, Milteer's supervisor, to the County. Because this error impacted the district court's analysis of Milteer's claims, we VACATE the district court's judgment and REMAND for further proceedings consistent with this opinion.

## I.

Milteer is a disabled veteran who has been diagnosed with hearing loss in both ears, cancer, a throat tumor, post-traumatic stress disorder ("PTSD"), hypertension, and diabetes. He is also an observant African American Messianic Jewish believer. The County hired Milteer in 2013 to work within its Texoma HIDTA division as an Information Technology ("IT") manager. Milteer directly reported to Sumpter, the director of the Texoma HIDTA.

Milteer testified by affidavit that in May 2020, while he was on sick leave, Sumpter telephoned him. Milteer felt forced to inform Sumpter that he was recovering from invasive throat surgery, that he was in remission for cancer, and that he had military-service-connected disabilities, including hearing loss and PTSD. Milteer asked Sumpter if he could remain home and work remotely to continue recovering from his surgery and to decrease his chances of contracting Covid-19. Sumpter denied his request to work remotely. Milteer further testified that, between August and October 2020, he continued to request to work remotely but that Sumpter "visibly irritated" denied his requests.

Milteer additionally testified that, as part of his role in a national data breach investigation, on October 17, 2020, he discovered a data file at the Texoma HIDTA containing Personal Identifiable Information ("PII") and HIPPA-protected data for his wife and daughter, as well as other employees and law enforcement personnel. "[He] also found that Sumpter may have

been involved in the unlawful disclosure." Milteer bought an external hard drive to download the data from the main system, and produced a receipt showing that he purchased the drive on that date.

Milteer further testified by affidavit that on October 26, 2020, he met with Julie Wright, the County's Human Resources Coordinator, and Tiffany Richardson, the County's IT Manager, to discuss the internal data breach of PII. He also complained about Sumpter's refusal to grant him accommodations.

On October 28, 2020, two days after his meeting with Wright and Richardson, Milteer informed Sumpter of his discovery of the data file containing the PII and HIPPA-protected data. The next day, Milteer was placed on administrative leave, was not permitted to go into the office, was disconnected from all Texoma HIDTA servers, and his access to remote login was removed.

On November 4, 2020, Milteer met with Sumpter and Keith Raymond Brown, Deputy Director of Texoma HIDTA, to discuss the data breach. Milteer was wearing religious garments, specifically a Tallit (prayer shawl) and Kippah (small head covering), traditionally worn during a period of praying and fasting, which Milteer was doing due to stress from work and health challenges. Milteer contends that Sumpter questioned him about his appearance; that Milteer explained he was an observant Messianic Jewish believer; and that Sumpter told him to remove the garments "because he thought it was disrespectful for the type of meeting that he was conducting." Milteer refused, and the meeting continued. However, Sumpter's questioning was "combative," triggering Milteer's PTSD symptoms. Milteer testified that due to his PTSD and difficulty hearing, he became non-responsive, and that he felt weak and faint. He states that he ultimately gave

an incorrect date for the alleged data breach of October 24, when he alleges it actually occurred on October 17, 2020.

On November 18, 2020, Milteer met with Wright again to report lack of accommodations, religious discrimination, and retaliation. On November 23, 2020, he filed an online charge with the Equal Employment Opportunity Commission ("EEOC"). Approximately one month later, the County terminated his employment. In a letter authored by Wright and dated December 28, 2020, the County stated in pertinent part:

> This letter is to inform you that as of today, December 28, 2020, we are terminating your employment with Navarro County. Your employment is at-will, which allows the County to end the employer-employee relationship without notice and without reason. This decision is based wholly on the recommendation of the Texoma HIDTA Executive Board's unanimous vote to terminate your employment status with Texoma HIDTA. The Executive Board's decision is based on the findings of a thorough investigation of the "allegation of data breach" made by you between the dates of October 21 and November 30, 2020.

Wright testified by affidavit that it was her "understanding that Texoma HIDTA terminated [Milteer's] employment because he made false allegations in regards to [a] purported data breach, lied during a formal investigation into the alleged data breach, and because he was no longer considered trustworthy by his supervisors at Texoma HIDTA."

After receiving his right to sue letter from the EEOC, Milteer filed the instant action against the County. He alleges that he suffered adverse employment actions and retaliation in the form of suspension and termination for requesting disability and religious accommodations and for expressing his religious beliefs. He additionally asserts that the County

denied him a reasonable accommodation and failed to engage in an interactive process after he requested such accommodation.

## II.

The County moved for summary judgment seeking dismissal of all of Milteer's claims. The County argued that it could not be held liable for any of the claims raised by Milteer because it was only Milteer's "nominal" employer, "nothing more than an administrator that processes [his] payroll and benefits for Texoma HIDTA." The County further contended that it had no authority to hire, supervise, direct, evaluate, or terminate anyone working at the Texoma HIDTA, and that its Executive Director (Sumpter) and its Executive Board, "none of whom are under the direction and control of Navarro County, have such powers and responsibilities." The County contended that consequently, as a matter of law, it "took no adverse employment action" against Milteer because it was not Milteer's employer. The County additionally argued it had no knowledge of any bona fide religious belief, qualifying disability, requested accommodation, or protected activity of Milteer. Because these are all essential elements of Milteer's claims, the County argued summary judgment in its favor was warranted.

The district court disagreed with the County's contention that it was only Milteer's "nominal" employer. Specifically, the court noted the evidence in the record showing that the County "was the entity that hired and fired Milteer," and that it paid his salary, withheld taxes, and provided benefits. Additionally, the district court noted that the County represented or appeared to represent on several occasions that it was Milteer's employer.

In light of this evidence, the court held that "a reasonable jury could find that Navarro County was Milteer's employer for purposes of his claims."[1]

The district court then applied the familiar *McDonnell Douglas* burden-shifting framework for discrimination claims.[2]  After assuming Milteer established a prima facie case of discrimination, the district court determined that the County "produced evidence of a legitimate, nondiscriminatory reason for terminating Milteer's employment: it was instructed to do [so] by the Texoma HIDTA Executive Board."  The district court next determined that Milteer was unable to come forward with evidence establishing that this reason was pretext for religious discrimination.[3]  The court therefore granted summary judgment in favor of the County dismissing Milteer's discriminatory-firing claim.

As to the failure-to-accommodate claim, the district court determined that Milteer failed to produce any evidence that he informed the County of his disabilities or that he requested an accommodation from the County.  The district court determined that Milteer had not argued or produced evidence that Sumpter was an employee or agent of the County or that his knowledge could be imputed to the County.  It further rejected Milteer's argument that

---

[1] In other words, there were genuine issues of material fact that the County was Milteer's employer.  *See E.E.O.C. v. Methodist Hosps. of Dall.*, 62 F.4th 938, 943 (5th Cir. 2023) ("[A] fact is genuinely in dispute only if a reasonable jury could return a verdict for the nonmoving party." (citation omitted)).

[2] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

[3] The district court raised this issue *sua sponte*, which (contrary to Milteer's contentions) it was permitted to do under Rule 56(f), as long as it gave Milteer an opportunity to respond, which it did.  *See* Fed. R. Civ. P. 56(f) ("After giving notice and a reasonable time to respond, the court may: . . . (2) grant the motion [for summary judgment] on grounds not raised by a party . . . .").

the County and Texoma HIDTA should be treated as the "same entity." Therefore, it granted summary judgment dismissing that claim.

For Milteer's retaliation claim, the district court focused on the causation element of the claim; that is, Milteer was required to show that he would not have been terminated "but for" retaliation for his protected conduct. Although Milteer pointed out that his termination occurred less than two months after his meeting with Sumpter and the filing of his EEOC complaint, the district court determined that the adverse action and its timing were "explained by the fortuity of the nature of Navarro County's being notified that the Texoma HIDTA Executive Board had unanimously voted to terminate Milteer's employment and when it received that notification." The district court thus granted the County's motion for summary judgment in full, dismissing Milteer's entire complaint. Milteer filed a timely notice of appeal.

## III.

This Court reviews the district court's summary judgment *de novo* and draws all reasonable inferences in favor of the non-moving party.[4] Under Rule 56(a), summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[5] "[A] fact is genuinely in dispute only if a reasonable jury could return a verdict for the nonmoving party."[6]

---

[4] *E.E.O.C.*, 62 F.4th at 943.

[5] FED. R. CIV. P. 56(a).

[6] *E.E.O.C.*, 62 F.4th at 943 (citation omitted).

## A.

Milteer and the County begin their appellate briefs by challenging the district court's determination that there is a genuine issue of material fact that the County was Milteer's employer. Specifically, Milteer argues that the County *and* the Texoma HIDTA Executive Board should be treated as the same entity and jointly employed him; while the County argues it is not Milteer's employer and the Texoma HIDTA is the only entity which should be considered his employer. As set forth below, neither party's argument is completely correct, but the answer favors Milteer.

The district court's ruling assumed that the Texoma HIDTA was an actual entity that could be considered separate from the County. Review of the federal statutes establishing the HIDTA program and the few cases that have interpreted them provide that HIDTAs, such as the Texoma HIDTA, are not entities unto themselves. Specifically, 21 U.S.C. § 1706(a)(1) establishes within the Office of National Drug Control Policy (which is in the Executive Office of the President) "a *program* to be known as the High Intensity Drug Trafficking Areas Program." The statute further provides that "[t]he purpose of the Program is to reduce drug trafficking and drug production" by, *inter alia*, "facilitating cooperation among Federal, State, local, and tribal law enforcement agencies to share information and implement coordinated enforcement activities."[7]

To be eligible to receive federal funding, each HIDTA shall be governed by an Executive Board which must "apportion an equal number of votes between representatives of participating Federal agencies and representatives of participating State, local, and tribal agencies."[8] The

---

[7] 21 U.S.C. § 1706(a)(2)(A).

[8] *Id.* § 1706(e)(1), (3).

statute states that its requirements "are intended to ensure the responsible use of Federal funds," and that it is not "intended to create an agency relationship between individual high intensity drug trafficking areas and the Federal Government."[9]  Thus, under the statute, an HIDTA is not to be considered a federal agency.

The Office of National Drug Control Policy has also issued a Program Policy and Budget Guidance ("Guidance") for the HIDTA Program.[10]  The Guidance states that "HIDTAs and their Executive Boards are not considered legal entities under Federal law and generally lack the authority to enter into contracts, hire employees, or obligate federal funds."[11]  The Executive Boards are responsible for selecting grantees, (for example, in this case, the County) that "provide financial management services."[12]  The "grantees will hire employees, issue contracts, manage property, and expend HIDTA program funds as necessary to carry out the grant activities approved by the Executive Board."[13]

Especially pertinent to this case, the Guidance provides that the Board shall select an individual to serve as the HIDTA Director, who "will be an employee or contractor of a grantee and will be subject to all employment, contracting, and other conditions established by that grantee."[14]  There are

---

[9] *Id.* § 1706(e)(4).

[10] Off. of Nat'l Drug Control Pol'y, High Intensity Drug Trafficking Areas (HIDTA) Program Policy and Budget Guidance (2020),extension://oemmndcbldboiebfnladdacbdfmadadm/https://www.gchidta.org/administrative/documents/PPBG.pdf.

[11] *Id.* § 5.4.

[12] *Id.*

[13] *Id.*

[14] *Id.* § 5.6.

few cases interpreting the statute establishing HIDTAs, but we note that one court has determined that an HIDTA "is not a juridical entity capable of being sued" and "functions at the behest, direction, and control of other governmental agencies."[15]

In light of the statute establishing HIDTAs and the Guidance issued by the Office of National Drug Control Policy, an HIDTA is not a legal entity capable of employing individuals, and an HIDTA Director is specifically an employee or contractor of a grantee. At most, an HIDTA is part of a "federal-local partnership."[16] As applied here, the Texoma HIDTA thus formed a partnership with the County, and Milteer and Sumpter were employed by the County.

Even without resort to the statute and Guidance, the summary-judgment evidence established that the County paid the salaries of both Sumpter and Milteer, and that neither the County alone, nor the Texoma HIDTA Executive Board alone, could hire or fire Milteer or Sumpter. The Board made the recommendation to the County to terminate Milteer's employment, but it had no authority to officially fire him. The County sent out the official letter firing Milteer, but could only do so upon the recommendation of the Executive Board. Sumpter's employment worked the same way. Based on the foregoing, we conclude that the district court erred in considering the County and the Texoma HIDTA as separate entities. The Texoma HIDTA is not a legal entity and, to the extent that it is, it forms

---

[15] *Sipes v. City of Monroe*, No. 11-1668, 2013 WL 1282457, at *4 (W.D. La. Mar. 28, 2013).

[16] *See Riviere v. Dir. of HIDTA V.I. Div.*, No. 2012-50, 2018 WL 1548686, at *3 (D. Ct. V.I., Mar. 29, 2018) (describing an HIDTA as "a joint federal-local partnership governed by an executive board composed of representatives from both federal and local agencies").

No. 23-10872

a partnership with the County such that the actions and inactions of Sumpter (Milteer's supervisor) could be imputed to the County.

### B.[17]

The district court's error impacted its analysis of Milteer's claims. Specifically, in applying the *McDonnell Douglas* burden-shifting framework for discrimination and retaliation claims, the district court treated the County and the Texoma HIDTA Executive Board as separate entities, and it did not believe it could consider the actions/inactions of Sumpter in determining whether Milteer came forward with evidence of pretext. Consequently, we must vacate and remand the district court's summary-judgment dismissal of Milteer's discrimination and retaliation claims. On remand, the district court should treat the County and the Texoma HIDTA as a single entity and should consider the actions/inactions of Sumpter in determining whether Milteer has come forward with evidence establishing pretext for unlawful discrimination and retaliation.

Regarding Milteer's failure-to-accommodate claim, the district court determined that Milteer failed to produce any evidence that he informed the County of his disabilities or that he requested an accommodation from the County. Again, because the County and the Texoma HIDTA should be

---

[17] We note that Milteer is proceeding *pro se* on appeal, and therefore liberally construe his brief. However, even *pro se* parties must brief the issues in order to preserve them for appeal. At times, it is apparent that Milteer is repeating arguments he made to the district court (specifically his Rehabilitation Act arguments) but has not tailored/revised them to include the proper standard of review for appeal or otherwise made appropriate appellate arguments. To the extent that he has not appropriately revised such arguments, we consider the arguments as not properly briefed and waived. *See Grant v. Cuellar*, 59 F.3d 523, 524 (5th Cir. 1995) ("Although we liberally construe briefs of *pro se* litigants and apply less stringent standards to parties proceeding *pro se* than to parties represented by counsel, *pro se* parties must still brief the issues and reasonably comply with the standards of Rule 28 [of the Federal Rules of Appellate Procedure].").

treated as a single entity, and because Sumpter's knowledge, actions, and inactions can be imputed to the County, we must also vacate and remand the district court's summary-judgment dismissal of Milteer's failure-to-accommodate claim.

## IV.

For the reasons set forth above, we agree with Milteer that the district court erred in treating the County and the Texoma HIDTA as separate entities and in failing to impute the knowledge, actions, and inactions of Sumpter to the County. Although we express no opinion on the ultimate merits of Milteer's claims, we VACATE the district court's summary judgment and REMAND for further proceedings consistent with this opinion.

VACATED and REMANDED.